Tho opinion of the Court was delivered by
Pocint, J.
Defendant resists the payment of a promissory note of $2,500, * * * executed by R. R. Whitehead, on the 7th of January, 1879, payable after date to order of plaintiff, for value received, on the grounds: .
1. That, at the time of executing the note, the deceased was laboring under a state of insanity, caused by habitual intemperance.
2. Want of consideration.
The latter plea having been sustained by the lower court, plaintiff appeals.
Burst. The plea of insanity is not supported by the evidence, which *531 is overwhelming in favor of the sanity of the deceased at the time that he executed the note.
The most that was proven by defendant’s witnesses on this plea, is that Whitehead was a hard drinker, and that he had had one or two attacks of delirium tremens, but the weight of the evidence proves conclusively that the deceased was aúnan of more than ordinary intelligence and of considerable mental culture, and that when sober, he was a shrewd business man, as shown by his negotiating, between December, 1878, and February, 1879, the sale of his half of a sugar plantation which had cost a year before $30,000, for the price of $35,000. It is worthy of note that this important transaction was closed by an authentic sale on the 13th of February, 1879, a little over a month after the date of the note in suit, and a little less than a month previous to the death of Whitehead, and that while his insanity is urged as a defense against this note, no one has ever even dreamed of attacking the validity of the sale made by him at a later date, when his insanity, if existing at all, should have increased on him.
At the request of Whitehead, the note was written under his dictation by the proprietor of the St. Charles Hotel, where the contracting parties were then stopping. That witness, and another, equally disinterested, both testify that on that day Whitehead was not only competent to attend to business, but that he was perfectly sober. This testimony is corroborated by his merchant’s book-keeper, from whom he drew $500, preparatory to his departure for Kentucky, to join his family, and two witnesses who saw him off on the train that evening, testify that he was both rational and sober at the moment of Ms departure.
We conclude that the defense of insanity is utterly without foundation. To sustain this plea under the circumstances of this case, would lay the foundation for a jurisprudence under which no man addicted to drinking could be held to any contract which his interest would prompt Mm to evade.
Second. The plea of want of consideration finds no better support, either in law or under the evidence in the case.
Defendant contends that Ms denial of any consideration for the note throws on plaintiff the burden of proving the consideration, and he cites two authorities, which seem to bear him out in the rule which he invokes. 6 N. S. 565, Bowen vs. Veil; 9 R. 183, Copeley vs. McFarland.
But the doctrine enunciated in those cases has long since been reversed in our jurisprudence. As far back as the case of Bradford vs. Cooper, 1 A. 325, the rule has been that the defendant who pleads want of consideration of a note purporting to have been made fdf value ■received, must prove clearly such want of consideration, even as against *532 the payee of the note. The doctrine has beon so frequently reaffirmed and enforced by our Courts, that we consider it as firmly embedded and fixed in our jurisprudence. Byrne vs. Grayson, 15 A. 459; Henderson vs. Giraudeau, 15 A. 382; McGuigin vs. Ochiglevich, 18 A. 92; Robinson vs. Doherty, 20 A. 209; Stephens vs. Lanier, 20 A. 347; Friedman vs. Houghton, 21 A. 200; Roderiguez vs. Lopez, 28 A. 94.
Defendant has offered no testimony in support of that idea. "Wo attach no importance to the statements of three or four witnesses in Kentucky, touching’ declarations of the deceased a short time before his death, of a trouble which haunted his mind, concerning a note of $2,500, or $25,000, which he had signed in New Orleans some time, in January.
This vague testimony vanishes in the presence of the testimony of Drouet and of Milliken, to whom he expressed his intention in February, 1879, of paying this note, and in the face of his attempt to compromise with Koarney, who was willing, on Milliken’s advice, to settle by taking less. Speaking of this note with Milliken, the purchaser of his share of the plantation, and his merchant, on the day before the sale, on the ,13th of February, Whitehead used the following language found in Milliken’s testimony : “As I have sold out, Kearney may be induced to take less, but if he insists upon it, I consider myself bound. I never went back on my word. I am an honest man, and I consider it ought to bo paid.”
This honest intention, though resisted by his administrator, must be enforced by the Courts.
Under the view which we have taken of the case, we find it uuneces-' sary to review and analyze the testimony which plaintiff introduced in support of the consideration of the note, but will merely say that it is satisfactory to our minds, and that it does prove a legal cause or consideration for the execution of the note.
The judgment of the lower court is, therefore, annulled, avoided and reversed, and it is now ordered, adjudged and decreed, that plaintiff do have and recover judgment of the administrator of the succession of Richard R. Whitehead, in the sum of two thousand five hundred dollars, with legal interest from judicial demand until paid, and costs of suit in both Courts.